Donald CULPEPPER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 46A04–9508–CR–326.

Court of Appeals of Indiana.

March 21, 1996.

Rehearing Denied May 17, 1996.

Transfer Denied July 17, 1996.

I.C. § 9–11–5–3.

William S. Kaminski, Donald W. Pagos, David P. Jones, LaPorte County Public Defender's Office, LaPorte, for appellant.

Pamela Carter, Attorney General, Jodi Kathryn Rowe, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Donald Culpepper (Culpepper) appeals following his conviction for possession of cocaine with intent to deliver, a Class A felony.[1]

We affirm in part and remand for resentencing.

### ISSUES

Culpepper raises the following issues which we restate as:

1. Whether the trial court erred by denying his request for a competency hearing.

2. Whether the trial court erred by denying his motion to suppress evidence.

3. Whether his sentence of 35 years is manifestly unreasonable.

### FACTS AND PROCEDURAL HISTORY

On the morning of October 20, 1994, Michigan City Police Officer Steve Westphal attempted to serve an arrest warrant for drug-related charges on Brentae Aldridge, but Aldridge could not be located. Later that evening, Officer Westphal received information from another arrestee that Aldridge was hiding in a motel on the south side of Michigan City and would be registered under a friend's name. Based on this information, Officer Westphal contacted Officers Chamberlain and Bush and Corporal Kanger and the group began checking the local motels' guest registries. When the police arrived at the Dollar Inn they saw Culpepper's name on the registry for room 206. Knowing that Culpepper and Aldridge were acquaintances, Officers Westphal, Bush and Chamberlain went to room 206 to look for Aldridge. The officers knocked on the door and were allowed into the room by Culpepper. Aldridge was not found in the motel room.

Once inside the room, Officer Westphal noticed two pieces of cellophane wrapping paper with white rocky-type residue on it laying on the desk, along with a plastic cup

and a white solid rock wrapped in a piece of the cellophane. Officer Westphal immediately recognized the white rock to be cocaine. Officer Westphal also observed a thick smoke in the room, which he did not recognize as cigarette smoke. Officer Westphal then seized the rock cocaine and escorted Culpepper into the bathroom and questioned him regarding Aldridge's whereabouts. Ultimately, Culpepper did not provide police with any information regarding Aldridge.

Culpepper was told by the officers to gather his belongings because he was being arrested for possession of cocaine. As Culpepper was being handcuffed, he turned toward a black bag and coat laying on the bed. Officer Bush then seized the bag and searched its contents. Inside the bag was a plastic bag containing 30 individual pieces of crack cocaine and two knives. A walkie talkie and a beeper were found on Culpepper's person and a crack pipe was found in the motel room.

On October 21, 1994, Culpepper was charged by information with possession of cocaine with intent to deliver as a Class A felony. Prior to trial, he filed a motion to suppress evidence which was denied following a suppression hearing. A jury found Culpepper guilty as charged after a two day trial. He received an enhanced sentence of 35 years. Culpepper now appeals.

### DISCUSSION AND DECISION

#### I. Competency Hearing

■ Culpepper first contends that the trial court erred by failing to grant his request for a competency hearing. On the first morning of trial, Culpepper's counsel made an oral motion for a competency hearing alleging that Culpepper was unable to understand the proceedings and unable to assist in his defense. In support of the motion, Culpepper told the court that he wished to fire his attorneys for various reasons and hire new attorneys. The court denied the request for a competency hearing and denied Culpepper's request to hire his own attorney.

After repeatedly stating to his counsel that he did not want to proceed with them repre-

1. IND.CODE 35–48–4–1 (1995 Supp.).

senting him, Culpepper decided not to participate in his trial and refused to come to the courtroom after the morning recess. Counsel pleaded with the court that although they did not wish to become a party to Culpepper's attempts to manipulate the process, they felt that it was impossible to render effective assistance of counsel under the circumstances. After lengthy discussion on the record with counsel, Culpepper and Culpepper's father, the court decided to proceed with the trial without Culpepper.

If a court has "reasonable grounds" for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense, the court then must immediately stop the proceedings and hold a competency hearing. *Collins v. State,* 643 N.E.2d 375, 379 (Ind.Ct. App.1994), *trans. denied.* Whether such reasonable grounds exist is a determination to be made by the trial court and will be reviewed only for an abuse of discretion. *Id.* (citing *Brown v. State,* 516 N.E.2d 29 (Ind. 1987)). The right to a competency hearing is not absolute and a trial judge's observations of a defendant in court are an adequate basis for determining whether a competency hearing is necessary. *Id.*

The trial and conviction of one without adequate competence is a denial of federal due process and a denial of a state statutory right as well. *Brewer v. State,* 646 N.E.2d 1382, 1384 (Ind.1995) (citing *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Tinsley v. State,* 260 Ind. 577, 298 N.E.2d 429 (1973); I.C. 35–36–3–1 (1993 [2])). A hearing to determine whether the accused is competent to stand trial is required where the trial court is confronted with evidence that creates a reasonable or bona fide doubt as to the competence of the accused. *Brewer,* 646 N.E.2d at 1382. The standard for deciding such competency is

whether or not the defendant currently possesses the ability to consult rationally with counsel and factually comprehend the proceedings against him or her. *Id.* (citing *Mato v. State,* 429 N.E.2d 945, 946 (Ind. 1982)). This test has been stated as requiring that the defendant have sufficient present ability to consult counsel with a reasonable degree of rational understanding and to have a rational as well as factual understanding of the proceedings brought against him or her. *Brewer,* 646 N.E.2d at 1384 (citing *Evans v. State,* 261 Ind. 148, 157, 300 N.E.2d 882, 887 (1973)). A trial court's determination to grant or deny a competency hearing will not be lightly disturbed. We will reverse only for an abuse of discretion. *Anthony v. State,* 540 N.E.2d 602, 606 (Ind.1989), *reh'g denied.*

From the record before us, we see that Culpepper requested a speedy trial, the trial court called a jury and cleared its calendar all in an effort to accommodate the defendant, and then Culpepper decided that he didn't like his attorneys and somehow wanted to hire his own attorneys. However, the court had found Culpepper to be indigent at the initial hearing and had appointed counsel accordingly. Essentially, Culpepper requested a speedy trial, and then refused to be present at his trial because things did not go his way. We see no evidence tending to establish that Culpepper was unable to assist in his defense; rather, he simply chose not to. Culpepper knowingly and voluntarily waived his right to be present during his trial. Culpepper's behavior does not create a bona fide question as to his competency to stand trial. The trial court did not abuse its discretion in denying Culpepper's request for a competency hearing.

## II. Motion to Suppress

Culpepper next contends that the trial court erred in denying his motion to suppress. Prior to trial, Culpepper filed a mo-

---

**2.** I.C. 35–36–3–1(a) provides as follows:

If at any time before the final submission of any criminal case to the court or the jury trying the case, the court has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense, the court shall immediately fix a time for a hearing to determine whether the defendant has that

ability. The court shall appoint two (2) or three (3) competent, disinterested psychiatrists, psychologists endorsed by the Indiana state board of examiners in psychology as health service providers in psychology, or physicians, at least one (1) of whom must be a psychiatrist, who shall examine ... whether the defendant can understand the proceedings and assist in the preparation of the defendant's defense.

tion to suppress the contents of the black bag seized from the motel room. Following a suppression hearing, the trial court denied the motion.

The Fourth Amendment to the United States Constitution and Article 1, section 11 of the Indiana Constitution protect both privacy and possessory interests by prohibiting unreasonable searches and seizures. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), *reh'g denied; Taylor v. State,* 659 N.E.2d 535, 537 (Ind.1995). Generally, a judicially issued search warrant is a condition precedent to a lawful search. *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *Fair v. State,* 627 N.E.2d 427, 430 (Ind.1993). Searches and seizures conducted outside of the judicial process are *per se* unreasonable under the Fourth Amendment. The burden of proof is on the State to prove that a warrantless search falls within one of the narrow exceptions to the warrant requirement. *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978); *Fair,* 627 N.E.2d at 430.

Before reaching the substantive issues, we make the threshold determination that Culpepper had a personal and legitimate expectation of privacy in his motel room. *See Ceroni v. State,* 559 N.E.2d 372, 373 (Ind.Ct.App.1990), *trans. denied* (A person's hotel room is a "home" for Fourth Amendment purposes); *Accord Covelli v. State,* 579 N.E.2d 466, 471 (Ind.Ct.App.1991), *trans. denied.*

The State contends that the search of Culpepper's black bag falls within the search incident to a lawful arrest exception to the warrant requirement. Incident to a lawful arrest, the arresting officer may conduct a warrantless search of the arrestee's person and the area within his or her immediate control. *Chimel v. California,* 395 U.S. 752, 772, 89 S.Ct. 2034, 2045, 23 L.Ed.2d 685 (1969), *reh'g denied; Covelli,* 579 N.E.2d at 473. The rationale behind this exception to the warrant requirement was set out in *Chimel* as follows:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

*Ceroni,* 559 N.E.2d at 375 (quoting *Chimel,* 395 U.S. at 762–763, 89 S.Ct. at 2039–2040).

Under the search incident to arrest exception, the initial arrest must be lawful. *Jones v. State,* 467 N.E.2d 1236, 1239 (Ind.Ct.App. 1984). Probable cause to search or to arrest is still required even though the circumstances fall within a warrant exception. *Jones,* 467 N.E.2d at 1239. Probable cause for arrest exists where at the time of arrest the officer has knowledge of facts and circumstances which warrant a man of reasonable caution to believe a suspect has committed the criminal act in question. *Jones,* 467 N.E.2d at 1239.

An officer may seize incriminating evidence without a warrant when two conditions are met. First, the officer must have otherwise complied with the Fourth Amendment. This means that "not only must the officer be lawfully located in a place from which the object can be plainly seen, but he or she must also have a lawful right of access to the object itself." *Taylor,* 659 N.E.2d at 538 (quoting *Horton v. California,* 496 U.S. 128, 137, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990)). Under the plain view doctrine, not only must the initial intrusion be lawful, but the incriminating nature of the evidence must have been immediately apparent. *Tay-*

lor, 659 N.E.2d at 538 (citing *Horton,* 496 U.S. at 136–37, 110 S.Ct. at 2307–08).

■ The law enforcement officers involved in Culpepper's arrest came to the motel in search of Aldridge, who had an outstanding warrant for his arrest. The officers had information that Aldridge would be at a south side motel and registered under a friend's name. Knowing that Aldridge and Culpepper were acquaintances, when the officers saw Culpepper's name on the motel registration, they were justified in going to the room in search of Aldridge. Culpepper voluntarily let the officers into the room, and Officer Westphal immediately spotted the cocaine and other evidence of illegal activity. Officer Westphal's seizure of the cocaine was justified under the plain view exception to the warrant requirement. Culpepper's arrest was based on probable cause and therefore lawful. *See Jones,* 467 N.E.2d at 1239 (A warrantless arrest is lawful if the arresting officer has probable cause to believe a felony has been committed).

Having determined that the initial intrusion and arrest were lawful, we next decide whether the search incident to the lawful arrest was proper. Culpepper relies on the *Ceroni* case, in which we declared a search under similar circumstances unlawful. 559 N.E.2d 372. While the search in *Ceroni* took place in a hotel room and the State sought refuge under the search incident to a lawful arrest exception, the similarity ends there. In *Ceroni,* the defendants were confined to the middle of the hotel room by several police officers and the contraband was in a drawer at least six to eight feet away from the defendants. In finding that the offered rationale for the search was merely a pretext for conducting a search for narcotics, we said that we would not "accept the State's justification that one of the captives could have lunged six to eight feet, opened the desk drawer, removed the satchel, reached into the satchel, and recovered a weapon or destroyed evidence before being apprehended by the five armed police officers in the room." *Ceroni,* 559 N.E.2d at 375. *Ceroni*

is factually distinguishable from the case before us.

After Culpepper was advised that he was under arrest and instructed to gather his belongings, he gestured toward the black bag. At the time, the black bag was on the bed and Culpepper was standing approximately one to two feet from the bag. The black bag was within Culpepper's immediate control and the officers had a legitimate interest in protecting themselves and preventing the destruction of evidence. Culpepper's search was conducted incident to his lawful arrest and was proper in scope.

### III. Reasonableness of Sentence

■ As Culpepper's final argument, he contends that his aggregate 35 year sentence is manifestly unreasonable. We first note *sua sponte* that because Culpepper's crimes were committed on October 20, 1994, he should have been sentenced pursuant to the 1994 version of I.C. 35–50–2–4. The amended version of I.C. 35–50–2–4 became effective July 1, 1994, and was applicable to crimes committed on or after its effective date. The presumptive sentence for a Class A felony under the 1994 version of I.C. 35–50–2–4 was 25 years, with not more that 20 years added for aggravating circumstances and not more that 10 years subtracted for mitigating circumstances.[3]

Immediately prior to imposing sentence, the trial court judge solicited a recommendation regarding sentence length from the State. The prosecutor recommended the "presumptive term plus five years." (R. 584). The court then imposed a sentence of 35 years and made the following comments on the record:

> The defendant shall be committed to the custody of the Department of Correction for classification and confinement for a period of Thirty-five years. The reasons for the imposition of the sentence are as follows: Court does find aggravating circumstances and finds no mitigating circumstances. Mr. Culpepper, I also reviewed your presentence report and your history

---

**3.** Prior to the 1994 amendment, the presumptive sentence for Class A felonies was 30 years. I.C. 35–50–2–4 (1993). In 1995, the legislature again amended I.C. 35–50–2–4 to return the presumptive sentence for Class A felonies to 30 years. I.C. 35–50–2–4 (1995 Supp.).

of criminal and delinquent activity have shown me that you have not learned anything from being involved in the criminal justice system; there have been repeated rehabilitative attempts for you, and opportunities for you to turn your life around and you have repeatedly rejected those opportunities. And it appears that if you are going to rehabilitate yourself it's gonna take a great deal of time and effort on your part. And I feel that you are in need of correctional and rehabilitative treatment, and that treatment can only be provided by commitment to a penal facility.

(R. 585). The court's sentencing order provides in relevant part that "[t]he Court finds the defendant, a male, to be 25 years of age, is guilty of Possession of Cocaine, a Class A felony, and finds aggravating circumstances, and sentences the defendant to the Department of Correction for classification and confinement for a period of Thirty-five (35) years." (R. 178).

Because neither the court's comments on the record nor the court's sentencing order makes clear which portion of the sentence was the presumptive sentence and which portion was added for aggravation, we can only presume that Culpepper was sentenced under the 1993 version of I.C. 35–50–2–4. This is even more clear to us in view of the prosecutor's recommendation just prior to the imposition of sentence. If the trial court intended to follow the prosecutor's recommendation, Culpepper's sentence should be reduced to 30 years. This represents the 25 year presumptive sentence under the 1994 version of I.C. 35–50–2–4, plus an additional 5 years for aggravating circumstances. We therefore remand for the trial court to impose sentence following the proper statute.

Culpepper also argues that because he possessed just slightly over three grams of cocaine, his sentence shocks the conscience and is manifestly unreasonable. He further contends that the court's sentencing order is inadequate in that it fails to articulate the aggravating circumstances on which it relied and fails to mention mitigating circumstances such as Culpepper's youthful age and the small quantity of cocaine.

We will not revise a sentence authorized by statute except where the sentence is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind.Appellate Rule 17(B); *Brewer*, 646 N.E.2d at 1386. If we determine that such manifest unreasonableness may be present, then we must determine whether no reasonable person could find such sentence appropriate to the particular offense and offender. *Brewer*, 646 N.E.2d at 1386.

When a trial court imposes the presumptive sentence, we presume that the court considered the appropriate factors; however, when the court imposes an aggravated or mitigated sentence, it must include within the record a statement of its reasons for selecting such a sentence. *Widener v. State*, 659 N.E.2d 529, 533 (Ind.1995). The trial court's statement of reasons must include the following three elements:

(1) it must identify all of the *significant* mitigating and aggravating circumstances, (2) it must state the specific reason why each circumstance is considered to be mitigating or aggravating, and (3) it must articulate that the court evaluated and balanced the mitigating circumstances against the aggravating circumstances to determine if the mitigating circumstances offset the aggravating circumstances.

*Widener*, 659 N.E.2d at 533 (citing *Hammons v. State*, 493 N.E.2d 1250, 1254 (Ind. 1986), *reh'g denied*) (emphasis in original).

The court justified its enhancement of Culpepper's sentence with the following statutory aggravating circumstances: (1) Culpepper's history of criminal and delinquent activity; and (2) his need for correctional or rehabilitative treatment that can best be provided by commitment to a penal facility. *See* I.C. 35–38–1–7.1(b)(2)(3) (1995 Supp.). A sentencing court must justify its enhancement of a presumptive sentence with more than a mere list of aggravating circumstances. *Gregory v. State*, 644 N.E.2d 543, 545 (Ind.1994), *reh'g denied*. The court must also explain the logic and reasoning behind its sentence. *Id.* Here, the court noted that the repeated rehabilitative attempts for Culpepper were unsuccessful and that Culpepper would need to spend "a great deal of

time and effort" in order to rehabilitate himself. We conclude that the court adequately articulated the aggravating circumstances upon which it relied in enhancing Culpepper's sentence.

Culpepper also argues that the trial court erred by failing to find mitigating circumstances. Trial courts are under no obligation to find the existence of a mitigating factor, nor are they under an obligation to assign any particular weight to mitigating factors which they do find exist. *Hardebeck*, 656 N.E.2d at 493; *see also Wingett v. State*, 640 N.E.2d 372, 373 (Ind.1994) ("[t]he finding of mitigating factors is not mandatory and rests within the discretion of the trial court.") We find no error.

Considering the trial court's findings on aggravating circumstances and that the court found no mitigating circumstances, we cannot say that Culpepper's sentence is manifestly unreasonable. The trial court adequately set forth the aggravating circumstances upon which it relied, and because the trial court is in the best position to determine these factors, we will not override its decision.

### CONCLUSION

The trial court did not err in denying Culpepper's motion for a competency hearing nor did it err in denying his motion to suppress the evidence seized incident to his lawful arrest. Furthermore, the trial court sufficiently articulated the aggravating circumstances upon which it relied, and Culpepper's sentence is not manifestly unreasonable. However, because it appears that the trial court sentenced Culpepper under the 1993 version of I.C. 35–50–2–4, we remand for resentencing under the proper statute.

We affirm in part and remand for resentencing.

DARDEN and KIRSCH, JJ., concur.