Alfonso SANTANA, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–9609–CR–380.

Court of Appeals of Indiana.

May 21, 1997.

S. Sargent Visher, Indianapolis, for Appellant–Defendant.

Pamela Carter, Attorney General, Andrew L. Hedges, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Alfonso Santana (Santana) appeals following his conviction for dealing in marijuana, a Class C felony;[1] and possession of marijuana, a Class D felony.[2]

We affirm.

### ISSUES

The following restated issues are raised for our review:

1. Whether Santana was properly advised of his *Miranda* warnings and whether he gave a knowing, voluntary and intelligent waiver of his rights.

2. Whether the police were justified in stopping and subsequently searching Santana's vehicle.

### FACTS AND PROCEDURAL HISTORY

On February 21, 1996, Detective Ray Potter of the Indianapolis Police Department's Drug Task Force, received information from the Texas Federal Bureau of Investigation that a package believed to contain a controlled substance would be arriving in Indianapolis. Specifically, Detective Potter was told that a package bearing a specific routing

---

1. Ind.Code 35–48–4–10.

2. Ind.Code 35–48–4–11.

number and addressed to Anita Cruz, would be delivered to 132 North Traub Avenue by a local shipping company. The presence of a controlled substance in the package was confirmed by a certified drug-detecting canine. Based on this information, Detective Potter obtained a warrant for the package and the Traub Avenue premises.

Detective Potter executed the search warrant and seized the package. Inside, he found a plastic container with a blue lid, clear packaging plastic, some clothing, and two large bundles of a green vegetation-type substance which he believed to be marijuana. Detective Potter then resealed the package and arranged for a controlled delivery of the package to the Traub Avenue address. State Police Investigator Randy Pratt delivered the package to the Traub Avenue address and a surveillance team began watch of the house. Within minutes after Investigator Pratt made the delivery, a male was observed leaving the residence in a 1983 blue Cadillac. He was carrying a red and white igloo-type cooler. The Cadillac circled around and picked up a second individual at the rear of the Traub Avenue residence. Detective Potter followed the car to Vermont Street and then lost sight of it for several minutes.

Approximately 30 minutes later, the blue Cadillac was seen in the area of 284 North Elder. The car was stopped by a uniformed car as it headed east on Ohio Street. The driver of the vehicle was later found to be Santana, and the passenger was found to be Antonio Morales, the co-defendant. This appeal involves only Santana. Following the stop, Santana was read his *Miranda* warnings and made incriminating statements. He was subsequently arrested.

During the search of the car, officers found a yellow document with Santana and his brother's name on it and the address of 2017 West Vermont Street. Police proceeded to that address and after receiving consent to search the premises, they found the parcel that was delivered to the Traub Avenue address, the red and white cooler, a set of electronic scales, clear plastic zip-lock bags, and approximately 13,000 grams of marijuana.

On February 23, 1996, Santana was charged by information with one count of dealing in marijuana, as a Class C felony; and one count of possession of marijuana, as a Class D felony. Following a bench trial, he was found guilty as charged. He received an executed sentence of four years. He now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION
### I. Miranda Warnings

Santana contends that he was not properly advised of his *Miranda* warnings and he did not knowingly waive those rights. Santana moved to suppress all statements made following what he contends to be a faulty advisement.

When a criminal defendant challenges the admissibility of his statements by filing a motion to suppress, the trial court is required to conduct a pretrial hearing outside the presence of the jury and make a determination whether the waiver of rights was voluntarily given. *Grimm v. State,* 556 N.E.2d 1327, 1330 (Ind.1990). On appeal from a trial court's determination regarding the admissibility of the defendant's statements, we will not weigh the evidence nor resolve witness credibility. *Snellgrove v. State,* 569 N.E.2d 337, 343 (Ind.1991). Rather, we consider all uncontroverted evidence together with any conflicting evidence that supports the trial court's decision. *Buie v. State,* 633 N.E.2d 250, 256 (Ind.1994), *reh'g denied.* We will not disturb the trial court's ruling if there is substantial evidence of probative value from which the trial court could reasonably have concluded beyond a reasonable doubt that the statements and waiver of rights were freely and voluntarily made. *Grimm,* 556 N.E.2d at 1330. The burden is upon the State to prove that the defendant's waiver of his *Miranda* rights was knowing and voluntary. *Deckard v. State,* 670 N.E.2d 1, 6 (Ind.1996).

After the initial stop of the vehicle, Santana was advised of his *Miranda* rights in English by Detective Potter. When asked whether he understood, Santana shrugged his shoulders and responded, "I guess I un-

derstand." (R. 82). Detective Potter then asked Santana whether he understood the English language, and Santana responded, "kind of, little bit." (R. 91). Upon further inquiry, Detective Potter discovered that Santana understood and read the Spanish language, so he handed him a printed Spanish *Miranda* advisement card and asked him to read it. After reading the card in Spanish, Santana indicated that he understood. Detective Potter and another IPD officer on the scene further indicated that they had no problem communicating with Santana, and that he responded appropriately to their commands and questions. Santana never indicated that he did not understand what he was being told to do by the various officers on the scene.

Weighing all of the evidence together, the trial court determined that although Santana probably did not understand the advisements in English, he was provided a copy of the same advisements in Spanish, which he read while Detective Potter observed. The trial court further determined that Santana demonstrated a basic level of understanding of the English language sufficient for him to understand Detective Potter's questions. Hence, when Detective Potter inquired whether Santana understood the Spanish version of his rights, Santana's understanding of English enabled him to accurately respond. Accordingly, the trial court denied Santana's motion to suppress and his statements were admitted into evidence.

Following the lunch break, Santana renewed his objection arguing that *Miranda*[3] dictates that the warning of the right to remain silent must be accompanied by the explanation that anything said *can and will* be used against the individual in court. A certified interpreter testified that the Spanish advisement stated "anything you can say to me, can be used against you in the court." (R. 227). The English version said that "[a]nything you say can be used against you in court." (R. 88). Because Santana indicated that he understood the Spanish version of the advisement and because there was no intent to mislead, the trial court again overruled Santana's motion to suppress.

 *Miranda,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, which was followed in Indiana by *Edwards v. State,* 274 Ind. 387, 412 N.E.2d 223 (1980), indicated that the proper advice to give one about to be interrogated is that the person has the right to remain silent and that anything said *can and will* be used against him in court. Here, the advisements simply said that anything *can* be used in court. Our supreme court reviewed this identical issue in *Myers v. State,* 510 N.E.2d 1360 (Ind.1987), and held that the omission of the word *will* was not a fatal variance so as to require suppression of the statements. *Id.* at 1365. Particularly, in *Myers,* the court relied upon the fact that the advisements were in all other respects in conformance with *Miranda,* and the appellant understood the rights and was willing to waive them. *Id.* Similarly, in the case before us, the advisements were otherwise accurate and Santana acknowledged that he understood those rights and still wished to speak with police. Under the facts and circumstances, the trial court did not err in denying Santana's renewed motion to suppress.

## II. Validity of the Search

 Next, Santana argues that the stop and subsequent search of his vehicle were improper. The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution protect both privacy and possessory interests by prohibiting unreasonable search and seizures. *Culpepper v. State,* 662 N.E.2d 670, 675 (Ind.Ct.App.1996), *reh'g denied, trans. denied* (citing *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), *reh'g denied; Taylor v. State,* 659 N.E.2d 535, 537 (Ind.1995)). Generally, a judicially issued search warrant is a condition precedent to a lawful search. *Fair v. State,* 627 N.E.2d 427, 430 (Ind.1993). Searches and seizures conducted outside of the judicial process are *per se* unreasonable under the Fourth Amendment. The burden of proof rests upon the State to prove that the warrantless search falls within one of the narrow exceptions to the warrant requirement.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978); *Fair,* 627 N.E.2d at 430.

The State maintains that the search was proper under the search incident to a lawful arrest exception to the warrant requirement.

### A. The Initial Stop

Santana first argues that the police did not possess the requisite level of reasonable suspicion to justify the initial stop of Santana's vehicle. At trial, Santana argued that the stop was illegal and therefore anything seized during the subsequent search of his vehicle was inadmissible. Following a brief suppression hearing, the trial court denied the motion to suppress.

■ One exception to the warrant requirement is an investigatory stop whereby a police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity may be afoot, even if the officer lacks probable cause. *C.D.T. v. State,* 653 N.E.2d 1041, 1044 (Ind.Ct.App.1995) (citing *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 1884–1885, 20 L.Ed.2d 889 (1968)). The *Terry* standard is intended to ameliorate the harshness of the strict probable cause requirement and permit police officers to stop on something less than probable cause. *C.D.T.,* 653 N.E.2d at 1044.

■ The State presented sufficient evidence to prove that the stop of Santana's vehicle was supported by reasonable suspicion. Specifically, within minutes after the Traub Avenue controlled delivery, two men were observed leaving the residence in a blue Cadillac. One man was carrying a white and red cooler. Although the cooler was not large enough to contain the entire quantity of marijuana in the original parcel, officers at the scene were concerned that a portion of the marijuana could be concealed in the cooler. When police observed the vehicle just prior to the stop, they confirmed the identification of the vehicle and recognized the same two male occupants of the vehicle. The totality of these facts supports the contention by the officers that they had a reasonable suspicion to believe criminal activity was afoot.

Hence, the trial court correctly denied Santana's motion to suppress.

### B. Search Incident to Arrest

■ Finally, Santana argues that the fruits of the search should be suppressed because the warrantless search was illegal. We disagree. Incident to a lawful arrest, the arresting officer may conduct a warrantless search of the arrestee's person and the area within his or her immediate control. *Chimel v. California,* 395 U.S. 752, 772, 89 S.Ct. 2034, 2045, 23 L.Ed.2d 685 (1969), *reh'g denied; Culpepper,* 662 N.E.2d at 675. The rationale behind this exception to the warrant requirement was set out in *Chimel* as follows:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

*Culpepper,* 662 N.E.2d at 675 (quoting *Chimel,* 395 U.S. at 762–763, 89 S.Ct. at 2040).

■ Under the search incident to arrest exception, the initial arrest must be lawful. *Culpepper,* 662 N.E.2d at 675. Probable cause to search or to arrest is still required even though the circumstances fall within a warrant exception. *Id.* Probable cause for arrest exists where at the time of arrest the officer has knowledge of facts and

**1360** 

circumstances which warrant a man of reasonable caution to believe a suspect has committed the criminal act in question. *Id.* (citing *Jones v. State,* 467 N.E.2d 1236, 1239 (Ind.Ct.App.1984)). Although probable cause does not exist when an officer initially stops a suspect to investigate, probable cause to arrest may develop during the investigation. *Id.*

██ Santana was placed under arrest after admitting knowledge of the package and its contents. Specifically, after being read his *Miranda* warnings, Santana admitted that he had received a parcel containing marijuana at the Traub Avenue address. He further stated that he and Morales were to meet two black males and give them the marijuana in exchange for $14,000 to be paid the following day at 2 p.m. Santana then directed IPD Officer Thomas Stitt to the supposed location. Officers went to that location, but nobody was seen in the area. Detective Potter's reasonable suspicion which justified the initial stop and brief detention rose to the level of probable cause during the course of the brief detention.

██ The fact that certain items were discovered in the car prior to Santana's formal arrest does not invalidate the search incident to arrest. As with many search cases and probable cause issues, the timing of events and the officer's knowledge are critical in determining the validity of the search. *Sears v. State,* 668 N.E.2d 662, 666 (Ind.1996). So long as probable cause exists to make an arrest, the fact that a suspect was not formally placed under arrest at the time of the search incident thereto will not invalidate the search. *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564–2565, 65 L.Ed.2d 633 (1980); *Jackson v. State,* 588 N.E.2d 588, 590 (Ind.Ct.App.1992).

### CONCLUSION

Having found that Santana was properly advised of his *Miranda* warnings, reasonable suspicion existed for the stop of Santana's vehicle and probable cause thereafter arose to justify his arrest and search of the vehicle, we affirm the trial court in all respects.

Affirmed.

DARDEN and BARTEAU, JJ., concur.