Jack KELLY

v.

Sheriff Charles C. FOTI, Jr., et al.

Civ. A. No. 93–3419.

United States District Court, E.D. Louisiana.

Nov. 23, 1994.

---

**6.** Defendants filed their notice of removal on September 19, 1994.

Jack M. Alltmont, Raymond Peter Ward, Sessions & Fishman, Michael Richard All-weiss, Judith Ann Kaufman, Ellen Widen Kessler, Lowe, Stein, Hoffman, Allweiss & Hauver, New Orleans, LA, Gerald J. Martinez, Metairie, LA, for Jack G. Kelly.

Freeman Rudolph Matthews, Thomas Allen Usry, Maida Magee Riess, Usry & Weeks, Metairie, LA, Linda Pacetti Morin, New Orleans, LA, for Charles C. Foti, Jr.

Kathy L. Torregano, City Attorney's Office, New Orleans, LA, Reginald James Laurent, Laurent & Laurent, Slidell, LA, Joseph Vincent Di Rosa, Jr., New Orleans, LA, for City of New Orleans.

## ORDER AND REASONS

BERRIGAN, District Judge.

The court has decided the parties' cross-motions for summary judgment. For the reasons set forth below, both motions are DENIED.

### I. BACKGROUND

The plaintiff, Jack Kelly, is a forty-nine year old woman who was attending a convention in New Orleans. Shortly after midnight on the evening of November 18, 1992, Ms. Kelly was driving her rental car back to her hotel in Metairie after having celebrated her birthday with some friends. Ms. Kelly made an illegal left turn, and was stopped by a New Orleans Police Officer, who asked to see her driver's license. Ms. Kelly did not have her license with her, informing the officer that she had forgotten it in her hotel room. The officer administered a "DWI" test on Ms. Kelly, which she passed. Nevertheless, the officer placed her under arrest for the traffic violations and had her transported to Central Lock–Up in Orleans Parish. The arresting officer did not search Ms. Kelly or the car, nor did he ask for the vehicle registration.

At Central Lock–Up, Ms. Kelly turned over a tote bag which she had been carrying containing her wallet, check book, various credit cards, her airline ticket, her address book and other personal items, and was placed in a holding cell. Before being placed in a second holding cell, Ms. Kelly was pat-down searched. The deputy who searched her did not notice the asthma inhaler and American Express card which she had forgotten in her pockets. While at Central Lock–Up, Ms. Kelly was allowed to use a telephone, and contacted her husband in Connecticut and a sister living in Baton Rouge.

After being placed in a third holding cell, Ms. Kelly was shackled and handcuffed and transferred to the female detention facility. Upon arriving at the detention facility, Ms. Kelly was escorted to a room where a female deputy strip-searched her. The deputy ordered Ms. Kelly to remove her clothes and then to turn around, bend over, spread her

buttocks and cough, so that the deputy could visually inspect Ms. Kelly's vaginal and rectal cavities.

Ms. Kelly put her clothes back on, and was escorted to another room, where she and another arrestee were ordered to undress. Ms. Kelly was then sprayed with disinfectant on her crotch, breasts and head.

After showering, Ms. Kelly placed her street clothes in a bag and received a prison uniform, but she forgot to hold on to her asthma inhaler. Ms. Kelly was placed in a cell at approximately 5:00 a.m. She made repeated requests for her inhaler. At approximately 10:30 a.m., a corpsman provided her with a different inhaler.

At approximately 11:30 a.m., Ms. Kelly was notified that she was bonded out. Ms. Kelly's incarceration lasted approximately fourteen hours.

Ms. Kelly has brought a 42 U.S.C. § 1983 claim against the defendants for deprivation of her federal constitutional rights and has also alleged a number of supplemental state causes of action. Defendant Sheriff Charles C. Foti, Jr. ("Sheriff Foti") has moved for summary judgment on all of the plaintiff's claims. The plaintiff has filed a cross-motion for summary judgment on her constitutional claims.

## II. ANALYSIS

### A. The Legality of the Strip Search

Under FRCP 56(c), summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." With regard to the plaintiff's § 1983 claims, Sheriff Foti has moved for summary judgment based on the legal defense of qualified immunity.

 Qualified immunity is a threshold issue in § 1983 cases: "[It] determines a defendant's immunity from suit, that is, his or her ability to avoid a trial altogether, rather than merely his or her immunity from damages." *Mangieri v. Clifton*, 29 F.3d

1012, 1015 (5th Cir.1994). Where a plaintiff has alleged the deprivation of a constitutional right by a government official, qualified immunity protects the official if he was acting in an objectively reasonable manner:

> Whether a defendant actually infracted a plaintiff's rights is not the central issue: 'Even defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard.'
>
> . . . . .
>
> 'Because qualified immunity does not address the substantive viability of a section 1983 claim, but rather the objective reasonableness of a defendant's actions, a plaintiff who is entitled to prevail on the merits is not necessarily entitled to prevail on the issue of qualified immunity.'

*Amsden v. Moran*, 904 F.2d 748, 751 (1st Cir.1990) (citations omitted). The objective reasonableness of an official's actions is "assessed in light of legal rules clearly established at the time of the incident." *Mangieri*, 29 F.2d at 1016.

The legal rules regarding strip searches were well-established at the time of Ms. Kelly's arrest. In *Mary Beth G. v. City of Chicago*, the Seventh Circuit described strip searches as:

> '[D]emeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission'.... In short, we can think of few exercises of authority by the state that intrude on the citizen's privacy and dignity as severely as the visual anal and genital searches practiced here.

723 F.2d 1263, 1272 (7th Cir.1983).[1] Describing the law at the time of Ms. Kelly's arrest, the Tenth Circuit stated, "There can be no doubt that a strip search is an invasion of personal rights of the first magnitude." *Chapman v. Nichols*, 989 F.2d 393, 395 (10th Cir.1993).

---

1. Worth noting is that one of the plaintiffs in the *Mary Beth* case was likewise stopped for making an illegal left turn and then arrested for failure to produce a driver's license. The court found her subsequent strip search unreasonable and unconstitutional.

Balanced against the invasion of a citizen's rights is the government's interest in conducting a strip search. Although "unanimous circuit authority condemn[s] blanket strip search policies applied to minor offense detainees," a prison strip search can be justified "by the demands of institutional security." *Chapman*, 989 F.2d at 397; *Watt v. City of Richardson Police Dep't.*, 849 F.2d 195, 197 (5th Cir.1988). Quoting approvingly from a Ninth Circuit decision, the *Watt* court stated the standard as follows:

'[W]e hold that arrestees charged with minor offenses may be subjected to a strip search only if jail officials possess a reasonable suspicion that the individual arrestee is carrying or concealing contraband. Reasonable suspicion may be based on such factors as the nature of the offense, the arrestee's appearance and conduct, and the prior arrest record.'

849 F.2d at 197.

■ Sheriff Foti concedes that "there are no allegations in this record nor any facts to indicate that the Plaintiff's appearance and conduct at the time of her arrest nor at any time prior to the strip search would constitute justification for the initiation of a strip search." Memo in Support of Motion for Summary Judgment, p. 39. Instead, he claims that a reasonable suspicion existed to strip search Ms. Kelly for possible contraband because of his deputies' alleged inability to determine if she had a criminal record. Ms. Kelly did not, and does not, in fact, have a criminal record, but because she did not have a valid picture i.d., the Sheriff claims he was unable to confirm her record. The Sheriff states, "[W]hen as here, an individual presents themselves for incarceration late at night under circumstances of a minor traffic charge (which will create a small fixed bond), conducts themselves so as to avoid the creation of any behavior justifying a strip search, fails to post the very low cash bond, while at the same time possessing no photo identification to a allow a ready check of identity and criminal records (and are admit-

tedly from out of state), the stage is set for a potential problem." *Id.* p. 41–42.

■ The Sheriff first argues that he is entitled to qualified immunity because none of the strip search cases specifically address this particular factual scenario. This argument would convert qualified immunity into absolute immunity. In *Anderson v. Creighton*, the Supreme Court wrote:

The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of preexisting law the unlawfulness must be apparent.*

483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (emphasis added).

■ Alternatively, Sheriff Foti argues that the strip search was objectively reasonable under the circumstances faced by his deputies. The court disagrees. The Sheriff is essentially arguing that whenever a person is arrested for driving without a license and fails to post bond, a strip search is justified because of an inability to verify the arrestee's criminal history. His position fails to satisfy the reasonable suspicion requirement of *Watt* and violates the prohibition against blanket strip search policies. *Chapman*, 989 F.2d at 397. The Sheriff seeks to create reasonable suspicion where he admits that there was none. The uncontested facts in this case are that Ms. Kelly's behavior did not arouse suspicion in the arresting officer, the deputy who conducted the perfunctory pat-down search, or in anyone who came in contact with her. It is not reasonable to suspect that Ms. Kelly's arrest on a minor traffic charge, her presentation of numerous forms of identification except for a picture i.d. and her failure to post bond immediately combine to indicate that she could have been attempting to smuggle contraband into prison.[2] The Sheriff's deputies did not even ask Ms. Kelly

2. The defendant's hypothetical scenario that Ms. Kelly might have deliberately provoked her own arrest, then deliberately refuse to arrange her bond so as to smuggle contraband into the jail is not only unreasonable, but far-fetched. Such speculation hardly substitutes for affirmative facts justifying a strip search.

if she had a criminal record, nor did they apparently make any attempt to use the other forms of identification that she had, all presumably consistent with each other, to run a check on her name. Furthermore, apparently no attempt was made to check Ms. Kelly's car rental agreement, which would have disclosed her driver's license information.

■ Finally, the existence of a criminal record, standing alone, does not necessarily warrant a strip search. As the Fifth Circuit stated in *Watt:*

> The arrestee's offense may be so minor, the prior criminal history so innocuous or ancient, and his or her characteristics so inconsistent with any rational fear that prison security is jeopardized as to undermine entirely the reasonableness of a particular strip search.

849 F.2d at 199.

In light of the strong precedent limiting the legality of strip searches and the uncontroverted evidence regarding Ms. Kelly's demeanor, the court concludes that it was not objectively reasonable to subject her to a strip search. Thus, the court will deny the Sheriff's motion for summary judgment based on qualified immunity.

Ms. Kelly has filed a cross-motion for summary judgment on the constitutionality of the strip search. The court will deny the motion without prejudice pending the outcome of an appeal, if any, of its denial of qualified immunity.

### B. *Summary Judgment on Remaining Issues*

Sheriff Foti has also moved for summary judgment on Ms. Kelly's claims of cruel and unusual punishment, violation of her rights to privacy, entitlement to punitive damages and state tort causes of action. The court finds that material issues of fact exist with respect to these claims, precluding summary judgment.

Accordingly, **IT IS ORDERED** that the Motions for Summary Judgment filed by de-

fendant Sheriff Charles C. Foti, Jr. and the plaintiff are **DENIED.**