De'Angela WILSON, Plaintiff,

v.

SHELBY COUNTY, ALABAMA,
Sheriff James Jones,
Defendants.

No. CV99–TMP–110–S.

United States District Court,
N.D. Alabama,
Southern Division.

May 4, 2000.

K. Lee Cleveland, Cleveland & Cleveland, PC, Birmingham, AL, Jonathan E. Lyerly, Birmingham, AL, for plaintiff.

Frank C. Ellis, Jr., Wallace Ellis Fowler & Head, Columbia, AL, John W. Dodson, Ferguson & Dodson LLP, Birmingham, AL, for Shelby County, defendant.

Frank C. Ellis, Jr., Wallace Ellis Fowler & Head, Columbia, AL, John W. Dodson, K. Claire White, Ferguson Frost & Dodson LLP, Birmingham, AL, for James Jones, defendant.

## ORDER DENYING SUMMARY JUDGMENT

PUTNAM, Chief United States Magistrate Judge.

This cause is before the court on the motion for summary judgment filed by defendant Sheriff James Jones on February 10, 2000 (Doc. 19). The motion addresses the only claim remaining in this action, whether Sheriff Jones's policy of requiring a strip search of all arrestees admitted to the Shelby County Jail violated the Fourth Amendment right of the plaintiff to be free of unreasonable searches.[1] The parties have briefed this motion, and oral argument was heard on April 10, 2000.

### Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. 2548.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed. R.Civ.P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if

---

1. All other claims against Shelby County, Alabama, were dismissed in the court's order of June 2, 1999. Likewise, all state-law claims against Sheriff Jones and all claims against him in his official capacity were dismissed on immunity grounds in that order. Finally, separate claims relating to a search of a cooler and the attempted removal of a belly-button ring from the plaintiff's navel were dismissed.

there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505; *see also Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 745 n. 11, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir.1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254, 106 S.Ct. 2505; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. The non-movant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n. 12 (11th Cir.1988).

### Undisputed Facts

Applying these standards to the evidence now before the court, the following facts appear to be undisputed or, if disputed, are taken in a light most favorable to the non-moving plaintiff.

On May 1, 1998, plaintiff was an 18–year student at Hoover High School. After having consumed three beers, she was stopped at a drivers' license checkpoint in Shelby County. She presented the deputies with a valid license, but the deputies suspected she was driving under the influence of alcohol. A search of her car produced a cooler containing unopened beer. Plaintiff was arrested for the offense of driving under the influence of alcohol and was transported to the Shelby County Jail. At the jail, plaintiff was given two Breathalyzer 5000 tests to determine whether she had excessive levels of alcohol in her system. On both tests, she registered 0.08 percent, which, under Alabama law, creates a presumption of intoxication for purposes of the DUI statute. *See Alabama Code* § 32–5A–191 *et seq.* Because the breath tests revealed that she was intoxicated, Alabama law [2] also required her to remain in custody overnight for a period of approximately eleven hours before being released on bond to her mother the next morning.

After completing the alcohol breath tests, plaintiff asked to go to the restroom. A female officer was called to escort her. The restroom was a small room with no windows, and no one but plaintiff and the female deputy were present. The toilet

---

**2.** Under *Ala.Code* § 32–5A–191(1), a person arrested for DUI who is younger than 21 years old may not be released on bond or otherwise until her blood alcohol content is less than 0.02 percent by weigh of alcohol. The validity of this statute is not at issue here.

was open to the room, not shielded in a stall. After plaintiff finished using the toilet, the female deputy instructed plaintiff to remove all of her clothing, including her bra and panties, to submit for a "final complete search." When she was completely nude, the female deputy looked into her mouth and ears, touching her only once to check behind the plaintiffs ears. "She checked my breasts and behind my ears and in my mouth and my nose. And then she told me to squat and spread my butt apart and cough three times." (Plaintiff's Deposition at 60). Plaintiff was then allowed to dress in a jail uniform before being placed alone in a cell. Plaintiff's cell was adjacent to an area where other female inmates were able to talk to her through the tray slot in the door. She otherwise was not intermingled with other inmates in the jail. She remained alone in the cell from about 10:30 p.m. the evening of her arrest to 9:30 a.m. the next morning when she was released to her mother.

There is no evidence that plaintiff had any prior criminal record at the time of her arrest. Sheriff Jones testified that no one had any reason to believe that plaintiff was secreting contraband when arrested (none was found) and that she was subjected to a strip search because all arrestees admitted to the general population of the jail are so searched to prevent the introduction of contraband. Sheriff Jones promulgated the strip-search policy in March 1996, and it provides in pertinent part:

POLICY:

It is the policy of the Shelby County Jail that each inmate be properly searched at the time of admission to the jail.

PROCEDURE:

Before the arrestee begins the booking process, a patdown search of the arrestee will be conducted by a same sex jail staff member. This shall be done regardless of the number of times the arrestee might have been searched by the arresting officer.

After the initial patdown search, the booking officer will supervise the inmate while he/she removes all items from his/her pockets.

Prior to placing the arrestee in a cell or detention room, a final complete search of the arrestee will be conducted by a same sex jail staff member.

The policy statement does not further define or describe a "final complete search." The search applies to all arrestees admitted to the jail, regardless of the charge against them, their criminal history, or the lack of a reason to believe they possess contraband. The articulated reason for the policy is to prevent the introduction of contraband into the jail.

Because of the physical configuration of the jail, it appears that female arrestees are subjected to the "final complete search," although male arrestees are not. Because DUI arrestees cannot be released, even after making bond, until their blood alcohol content recedes below the legal limit of 0.08 percent (or 0.02 percent for anyone younger than 21), most arrestees are required to remain at the jail for a period of several hours after their arrest. Apparently, only female inmates are actually placed in a cell in the jail's general population and, consequently, are subjected to the strip-search procedure. (Affidavit of Captain Wayne E. Watts). While not clearly reflected in the evidence before the court, defense counsel did not object to or refute plaintiff's counsel's statement during the hearing on the motion for summary judgment that male DUI arrestees are held in a detention area in or near the booking room, while female arrestees are admitted to a cell in the general population of the jail because there is no other area in which to hold them.

Plaintiff testified that she suffered emotional and mental anguish due to the strip search. She claimed to have suffered from nightmares about police officers at her home for several weeks afterward.

### Discussion

Defendant Sheriff Jones has moved for summary judgment, arguing that the "final

complete search" was reasonable and did not violate the Fourth Amendment and that he is entitled to qualified immunity from damages. Because the court is first required to determine whether the search described in plaintiff's description constituted a violation of her rights before considering the defendant's claim of qualified immunity, the issues will be discussed in that order. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

## I. *The Fourth Amendment*

The Fourth Amendment to the Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath of affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

A core concern of the Amendment is protection of the privacy and dignity of the "persons" of all Americans, even those arrested and incarcerated. "The Fourth Amendment applies with its fullest vigor against any intrusions of the human body." *Allen v. Board of Commissioners of County of Wyandotte*, 1991 WL 183554 (D.Kan. 1991) (*citing Horton v. Goose Creek Independent School District*, 690 F.2d 470, 478 (5th Cir.1982) *cert. denied* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983)). There is nothing more intrusive and potentially violative of the Fourth Amendment than being required to stand (or squat) naked before a uniformed officer of the state and inspected in the most offensive ways. It has rightly been described as "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission." *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1272 (7th Cir.1983) (*quoted in Justice v. City of Peachtree City*, 961 F.2d 188, 192 (11th Cir.1992)).

The constitutional touchstone of every search is whether it is "reasonable" under the circumstances. *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). In *Bell*, the Supreme Court concluded that strip searches of inmates in the MCC in New York following contact visits were reasonable because of institutional security concerns about the smuggling of contraband into the jail. This cannot be read, however, as validation of strip searches of all arrestees under all circumstances. Even in *Bell*, the Court explained that the reasonableness of a strip search is measured by a balancing of the state's need to search against the interest of the arrestee protected by the Fourth Amendment.

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the search against the invasion of the personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). There can be no "mechanical" application of a strip search policy because such a rigid approach is the very antithesis of a balancing of the interests involved. A blanket policy requiring the strip search of all arrestees, regardless of the charge against them or the lack of reasonable suspicion that they are secreting contraband, fails to take into account the "justification for initiating" a search, one of the very factors identified by the Supreme Court.

Because strip searches intrude on the most private concerns of people, their bodily privacy, the circuit courts have unanimously rejected blanket policies authorizing strip searches of minor-offense arrestees. *Chapman v. Nichols*, 989 F.2d 393, 397 (10th Cir.1993) ("[U]nanimous circuit authority condemn[s] blanket strip

search policies applied to minor offense detainees."). *See Weber v. Dell,* 804 F.2d 796 (2nd Cir.1986), *cert. denied sub nom., County of Monroe v. Weber,* 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987); *Walsh v. Franco,* 849 F.2d 66 (2nd Cir. 1988); *Logan v. Shealy,* 660 F.2d 1007 (4th Cir.1981), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *Stewart v. County of Lubbock,* 767 F.2d 153 (5th Cir.1985), *cert. denied,* 475 U.S. 1066, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986); *Watt v. City of Richardson Police Department,* 849 F.2d 195 (5th Cir.1988); *Masters v. Crouch,* 872 F.2d 1248 (6th Cir.1989), *cert. denied sub nom., Frey v. Masters,* 493 U.S. 977, 110 S.Ct. 503, 107 L.Ed.2d 506 (1989); *Mary Beth G. v. City of Chicago,* 723 F.2d 1263 (7th Cir.1983); *Jones v. Edwards,* 770 F.2d 739 (8th Cir.1985); *Giles v. Ackerman,* 746 F.2d 614 (9th Cir. 1984), *cert. denied,* 471 U.S. 1053, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985); *Ward v. San Diego County,* 791 F.2d 1329 (9th Cir. 1986); *Hill v. Bogans,* 735 F.2d 391 (10th Cir.1984); *Justice v. City of Peachtree City,* 961 F.2d 188, 192 (11th Cir.1992). Rather, in such cases, the courts have developed a "reasonable suspicion" test, which focuses on whether there is an objective, reasonable suspicion that the arrestee may be secreting drugs, a weapon, or other contraband on or in her body. The mantra of "institutional security" alone does not justify such searches. First, the courts have concluded that situations involving an arrest for a minor offense do not entail the same degree of concern for smuggling contraband into the jail as do contact visits with inmates in the jail. Most minor offenses are not usually associated with weapons or contraband. Moreover, an arrest comes as a surprise, reducing the opportunity for the arrestee to form a plan (or incentive) for smuggling contraband into the jail. This case is an example: the plaintiff here was apparently unaware that she was to be put into the jail until she was handed a jail uniform *after* the strip search. Second, most jails have the capability of reducing institution-al security concerns by limiting or avoiding intermingling minor-offense arrestees with the general jail population. *See Giles v. Ackerman,* 746 F.2d 614, 619 (9th Cir. 1984), *cert. denied,* 471 U.S. 1053, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985); *Masters v. Crouch,* 872 F.2d 1248, 1255 (6th Cir.1989), *cert. denied sub nom., Frey v. Masters,* 493 U.S. 977, 110 S.Ct. 503, 107 L.Ed.2d 506 (1989). Mere administrative convenience does not justify the invasion of so personal a privacy interest.

The Eleventh Circuit's opinion in *Justice v. City of Peachtree City,* 961 F.2d 188 (11th Cir.1992), sheds some light, but not complete illumination, on this case. There, the court of appeals, while acknowledging that they were troubled by it, held "that law enforcement officers may conduct a strip search of a juvenile in custody, even for a minor offense, based upon reasonable suspicion to believe that the juvenile is concealing weapons or contraband." *Id.* at 193. Questions left for this case are whether the "reasonable suspicion" test is limited to strip searches of juveniles or does it extend to all arrestees for minor offenses; whether an 18–year–old is a "juvenile" for purposes of the holding in the case; and whether the result would be different if the defendant acknowledges that **no** reasonable suspicion existed that the arrestee was secreting a weapon or contraband, but searched her anyway. Ultimately, the court of appeals upheld the strip search in *Justice* precisely because there was an objective, reasonable suspicion that the juvenile was hiding contraband.

> After reviewing the totality of the circumstances in light of what the officers believed as a result of their training and experience, we hold that the officers possessed a particularized and objective basis for suspecting Simon of hiding contraband on her person. The facts of this case gave the officers a "reasonable suspicion," and thus the search did not violate the Fourth Amendment.

*Id.* at 194. Thus, in a very fundamental way, *Justice* is distinguishable from the instant case in which the defendant admits that **no** reasonable suspicion existed to search plaintiff and that she was strip searched simply because the defendant's blanket policy requires all arrestees admitted to the jail to be searched. For the reasons expressed above, this court believes that such a mechanical application of the policy violates the Fourth Amendment because it fails to balance the interest of the arrestee in personal privacy against the need to search; simply put, no balancing is done, all are searched.

The judges of this court are not unfamiliar with Sheriff Jones's strip search policy at the Shelby County Jail. In *Tami G. Mumpower and Cheryl Rhena Grauel v. Sheriff James Jones*, CV–98–J–1097–S, Judge Johnson found that similar strip searches of two women arrested for public intoxication and DUI did not violate their Fourth Amendment rights, citing that case's similarity to *Magill v. Lee County*, 990 F.Supp. 1382 (M.D.Ala.), *aff'd*, 161 F.3d 22 (11th Cir.1998). Judge Johnson did not address the "reasonable suspicion" test articulated in *Justice*. In *Sandy Skurstenis v. Sheriff James Jones*, CV–98–AR–2295–S, Judge Acker found the blanket strip-search policy to be an unconstitutional violation of the Fourth Amendment when applied to an adult female [3] arrested for DUI, but concluded that the defendants were shielded from an award of damages by qualified immunity. Judge Acker expressed the opinion that nothing

in *Justice* limited the "reasonable suspicion" test simply to strip searches of juveniles.

■ The undersigned respectfully disagrees with Judge Johnson and concludes that the strip search of this 18–year–old girl, arrested for DUI and with no prior criminal record of any sort, isolated in a cell by herself, and creating **no** reasonable suspicion that she was hiding contraband, violated her Fourth Amendment right to be free from "unreasonable" searches. *Bell* continues to stand for the proposition that searches must be reasonable and that strip searches of jail inmates must be based on a balancing of the competing interest of bodily privacy on the one hand and jail security on the other. The balance here clearly falls in favor of the plaintiff and against the need for the search. There simply was no justification for it. Defendant admits that his officers had **no** reasonable suspicion that she was secreting any contraband; she was arrested for a minor offense not usually associated with the danger of introducing jail contraband. Her behavior and demeanor raised no concerns. While in the jail, she was put in a cell alone, limiting if not eliminating any intermingling with the jail population. The danger that she might introduce contraband into the jail was so small,[4] compared to the magnitude of the intrusion on her bodily privacy, that the search cannot be found reasonable under *Bell*, *Justice*, or the Fourth Amendment.

---

**3.** It is interesting to note that all of these cases involve women. One may be tempted to explain that fact with an out-dated, stereotypical notion that women are simply more sensitive to such intrusions on their privacy. It may be, however, as Judge Acker found, that only women are subjected to the strip search policy, while men arrested for similar offenses are not. Captain Watts's affidavit at least implies that, due to facilities limitations at the jail, women arrested for DUI must be admitted to the jail (and thus strip searched), while men arrested for DUI are not admitted to the jail but detained somewhere outside the general jail population. The court draws this

inference most favorably to the plaintiff as required by Rule 56., *FRCP*, for purposes of defendant's summary judgment motion. It is arguable that such differential treatment bears on the reasonableness of the search under *Bell*. A search policy that seems to disproportionately subject women to demeaning strip searches certainly is less reasonable than one impacting all without regard to gender.

**4.** Again, the defendant admits that his officers had **no** reasonable suspicion that she was hiding contraband.

The court offers here a brief note on causation. This is not a case of attempting to impose liability on Sheriff Jones on the basis of *respondeat superior*. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, it is clear that the strip search of the plaintiff was mandated by the policy promulgated by Sheriff Jones. Thus, there is an affirmative link between the constitutional violation and acts of the Sheriff, namely the promulgation of the policy requiring the strip search of all arrestees admitted to the jail, regardless of other circumstances, such as the lack of reasonable suspicion. Sheriff Jones's strip search policy was the moving force behind the search.

## II. *Qualified Immunity*

■ The undersigned also respectfully disagrees with Judge Acker's assessment that qualified immunity shields the defendant from an award of damages. The law of qualified immunity in the Eleventh Circuit is well understood, if difficult to apply. It is the norm; a public official loses the shield of qualified immunity only if the factual contours of the right allegedly violated were so well-established in concrete terms that no reasonable officer under the circumstances could believe that his actions were lawful. *Lassiter v. Alabama A & M University Board of Trustees*, 28 F.3d 1146 (11th Cir.1994) (en banc). Once the official has shown that he was acting within his discretionary authority, the burden is then upon the plaintiff to show that the official's conduct violated clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The law must be clearly established in such a concrete and factually defined way that it is obvious to every reasonable person in the defendant's place that what he is doing violates federal law. Nevertheless, in the context of Fourth Amendment cases, qualified immunity can be lost if the plaintiff shows that "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." *Priester v. City of Riviera Beach, Florida*, 208 F.3d 919 (11th Cir.2000) (*quoting Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir.1997)).

■ The court believes that Sheriff Jones is not entitled to qualified immunity for promulgating a blanket policy mandating the strip search of all arrestees admitted to the Shelby County Jail, disregarding the nature of the charge against them, the lack of reasonable suspicion that they may be hiding contraband, and the jail's ability to reduce the intermingling of arrestees with the rest of the jail population. Such a policy was contrary to the clear instructions of *Bell* that searches are reasonable only to the extent that the need to conduct a strip search outweighs the fundamental privacy interest of the arrestee. *Bell* does not stand for the proposition that a blanket policy of strip searching all arrestees under all circumstances is valid. Furthermore, prior to this search in 1998, the Eleventh Circuit's holding in *Justice* clearly established that juveniles could be strip searched only if reasonable suspicion existed to believe they were hiding contraband. At a bare minimum, reasonable suspicion is necessary to warrant such an offensive invasion of bodily privacy. Indeed, all of the circuit court cases cited hereinabove, and countless district court cases, have concluded that strips searches of arrestees charged with minor offenses can be justified only by an objective, reasonable suspicion focused on the arrestee, not just institutional concerns. Thus, the court concludes that the law was clearly established in 1998, that a rigid, blanket policy of strip searching all arrestees admitted to the jail violated the Fourth Amendment, and the defendant is not entitled to qualified immunity.

▇ Alternatively, the court finds that the policy authorizing this strip search lay "so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." As mentioned, there is no greater expectation of privacy than that associated with our bodies; far more than any other expectation of privacy in a free society, we expect to avoid being required to strip naked, squat, spread our buttocks apart, and cough. At the very least, to intrude upon that privacy there must be some reason to do so. The policy promulgated by Sheriff Jones, however, not only allows but requires that intrusion when there is no reason whatsoever to do so, when there is **no** reasonable suspicion of contraband and no reason to intermingle the arrestee with the jail population. The irrationality of the policy is further compounded by the fact that it disproportionately impacts women, a fact apparently recognized by Sheriff Jones. Women arrested for DUI are strip searched and admitted to the jail, while men arrested for DUI are detained in an area outside the jail population without being strip searched. "Where the strip search of a person is conducted pursuant to a policy or a statute encompassing all arrestees and there is no reason to suspect that the person is harboring drugs, weapons, or contraband, the search is arbitrary and purposeless, and thus unconstitutional." *Kennedy v. Los Angeles Police Department,* 901 F.2d 702, 715–716 (9th Cir.1989). That is exactly the problem with the policy applied in this search; it was arbitrary and purposeless, lacking any reason for such an abhorrent invasion of an 18–year–old girl. The policy required a violation of her right to bodily privacy even though she was arrested for a non-violent, relatively minor offense, she had no criminal record, the officers had **no** suspicion that she was hiding anything, and they knew she would be confined in a cell alone. Under these facts, the search required by the policy was unmistakably unconstitutional, a fact readily apparent to any reasonable law enforcement officer. The unlawfulness of such a policy, therefore, was readily apparent as a clear violation of the Fourth Amendment even if no caselaw is sufficiently similar to this one.[5]

### Conclusion

The court finds that the defendant's motion for summary judgment is due to be, and hereby is, DENIED. Not only was the strip search of plaintiff a clear violation of her Fourth Amendment expectation of bodily privacy, but the policy under which it was carried out was so clearly unlawful that defendant is not entitled to qualified immunity.

---

**5.** As pointed out above, however, there is a large body of case law around the country condemning just such arbitrary and purposeless strip searches. Even a casual reading of the cases cited in this opinion makes plain that a blanket policy of strip searching all arrestees without reference to any reasonable suspicion they are hiding contraband is unconstitutional, and has been so characterized for more than fifteen years. In addition to the cases cited in text, see also *John Does v. Boyd,* 613 F.Supp. 1514 (D.Minn.1985); *Smith v. Montgomery County, Md.,* 643 F.Supp. 435 (D.Md.1986); *Ernst v. Borough of Fort Lee,* 739 F.Supp. 220 (D.N.J., 1990); *Doe v. Calumet City, Illinois,* 754 F.Supp. 1211 (N.D.Ill.1990); *Allen v. Board of Commissioners of County of Wyandotte,* 1991 WL 183554 (D.Kan.1991); *Draper v. Walsh,* 790 F.Supp. 1553 (W.D.Okla.1991); *Kelly v. Foti,* 870 F.Supp. 126 (E.D.La.1994); *Dugas v. Jefferson County,* 931 F.Supp. 1315 (E.D.Texas 1996); *Foote v. Spiegel,* 995 F.Supp. 1347 (D.Utah, 1998); *Shain v. Ellison,* 53 F.Supp.2d 564 (E.D.N.Y.1999).