Michael S. EDWARDS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 09A02–0009–CR–608.

Court of Appeals of Indiana.

May 9, 2001.

Jay T. Hirschauer, Cass County Public Defender, Logansport, IN, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Joseph A. Samreta, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Chief Judge.

Michael S. Edwards appeals the denial of his motions to suppress and dismiss. He raises five issues which we consolidate and restate as:

1) whether the judge pro tempore had the authority to conduct the suppression hearing;

2) whether the trial court erred in denying his motion to suppress; and

3) whether the trial court erred in denying his motion to dismiss.

We affirm.

On January 29, 2000, Logansport Police Officers Fred Rogers and Robert Smith stopped a vehicle being driven 10 to 15 miles per hour over the speed limit on a snow-covered road. Officer Rogers approached the driver, and Officer Smith approached the passenger. When asked for identification, the driver of the vehicle produced a learner's permit with his picture and the name Michael Edwards. The passenger told Officer Smith that his name was Michael Edwards and showed the officer a pay stub with that name.

When Officer Smith returned to the vehicle to issue the driver a speeding citation, the two officers realized that both of the men in the stopped car had identified themselves as Michael Edwards and given the same date of birth. The officers confronted the two men and handcuffed them for officer safety. The passenger apologized for lying, explained that the pay stub belonged to the driver, and identified himself as Michael Smith. He later identified himself as both Nigel and Miguel Smith, gave the officers two different dates of birth, and told the officers that the driver's name was Michael Edwards. Both men appeared nervous.

Because neither of the men had a valid driver's license, and the officers were unable to ascertain the men's identities, both men were transported to the police station. The driver was transported in Officer Smith's vehicle. A search of the driver at the police station revealed .14 grams of crack cocaine in the man's left boot. A subsequent search of Officer Smith's vehicle revealed 24 individually wrapped pieces of rock cocaine totaling 3.10 grams.

While at the police station, the passenger told the officers that he had given his identification information to the driver so that the driver could go to the license branch and obtain an illegal identification card. The passenger was subsequently arrested.[1] Thereafter, the passenger told the officers that he had identification at his house. Three officers accompanied the passenger to his house and searched it with the passenger's consent. The passenger gave the officers a birth certificate with the name Michael Edwards. The passenger was returned to the police station where he was searched. Police offi-

---

1. The record is silent as to the reason for the arrest.

cers found a baggie with seven rocks of crack cocaine weighing 1.12 grams hidden between the passenger's buttocks.

Two days later, officers learned through fingerprint analysis that the passenger's name was Michael Edwards. He was charged with possession of cocaine as a Class A felony.[2] The information alleged that Edwards possessed three or more grams of cocaine. Edwards filed a motion to suppress the cocaine which the trial court denied. He then filed a motion to set aside the order denying his motion. Specifically, he claimed that the judge pro tempore who ruled on his motion to suppress did not have the authority to conduct the hearing because the regular circuit county judge was in the courthouse that day. He also filed a motion to dismiss the charges because of insufficient evidence. The trial court denied both motions.

### I.

 The first issue is whether the judge pro tempore had the authority to conduct the suppression hearing. Edwards contends that he did not because the regular circuit court judge was in the courthouse the day of the hearing. In support of his argument, Edwards directs us to *Survance v. State*, 465 N.E.2d 1076 (Ind.1984), *reh'g denied*. However, pursuant to *Survance*, Edwards has waived appellate review of this issue because he

**2.** Ind.Code § 35–48–4–1.

**3.** Edwards also argues that the "Judge Pro Tempore ... unconstitutionally and improperly asserted his thought process into this matter as an advocate for the State of Indiana rather than as a detached and neutral magistrate." Appellant's Brief, p. 23. Edwards has waived appellate review of this issue because he failed to object at the suppression hearing. *See Survance*, 465 N.E.2d 1076. Further, Edwards has failed to direct us to evidence in the record to support his claim.

failed to object at the hearing. *See id.* at 1082.

Waiver notwithstanding, Edwards's argument must fail. *Survance* does not stand for the proposition that a judge pro tempore lacks authority to conduct a hearing when the circuit court judge is in the courthouse. Rather, in *Survance*, our supreme court explained that a "judge pro tempore may not properly act as judge of the court in one room while the regular judge of that court is exercising jurisdiction in another room." *Id.*

Here, we agree with the State that there is no evidence that the circuit court judge was exercising jurisdiction in another room. We further agree with the State that the "mere fact that the elected judge may have been in the courthouse at some point that day does not affect the power of the judge pro tempore to act." Appellee's Brief, p. 11. We find no error here.[3] *See Survance*, 465 N.E.2d at 1082.

### II.

The next issue is whether the trial court erred in denying Edwards's motion to suppress. Specifically, Edwards contends that the trial court should have granted the motion because his "warrantless arrest, detention and repeated searches violated the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution."[4] We disagree.

Our review of the record reveals no such evidence, and we find no error.

**4.** The Fourth Amendment to the United States Constitution provides as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

■ Review of the denial of a motion to suppress is similar to other sufficiency matters. *Taylor v. State*, 689 N.E.2d 699, 702 (Ind.1997). The record must disclose substantial evidence of probative value that supports the trial court's decision. *Id.* We do not reweigh the evidence, and we consider conflicting evidence most favorably to the trial court's ruling. *Id.*

■ The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution protect privacy and possessory interests by prohibiting unreasonable searches and seizures. *Johnson v. State*, 710 N.E.2d 925, 927 (Ind.Ct.App.1999). Generally, a search warrant is a condition precedent to a lawful search. *Id.* However, the warrant requirement is subject to a few well-delineated exceptions. *Id.*

For example, a police officer may stop a vehicle when he or she observes a traffic violation. *Smith v. State*, 713 N.E.2d 338, 342 (Ind.Ct.App.1999), *trans. denied.* Further, a police officer may briefly detain a person for investigatory purposes if, based on specific and articulable facts, the officer has a reasonable suspicion of criminal activity. *Kenner v. State*, 703 N.E.2d 1122, 1125 (Ind.Ct.App.1999), *reh'g denied, trans. denied.*

■ Here, Officers Smith and Rogers stopped the vehicle in which Edwards was a passenger because it was being driven 10 to 15 miles per hour over the speed limit on a snow-covered street. When approached by Officers Smith and Rogers, the driver and the passenger both identified themselves as Michael Edwards and gave the same dates of birth. When confronted, the passenger apologized for his dishonesty and identified himself as Michael Smith, Miguel Smith and Nigel Smith. He also gave the officers two different dates of birth. These specific and articulable facts justified both the stop of the vehicle and the detention of its occupants for investigative purposes. *See Kenner*, 703 N.E.2d at 1126.

■ Further, we agree with the State that "the manner in which Edwards acted also gave police probable cause to arrest him." Appellee's Brief, p. 6. Probable cause for arrest exists where at the time of arrest the officer has knowledge of facts and circumstances which warrant a man of reasonable caution to believe a suspect has committed the criminal act in question. *Santana v. State*, 679 N.E.2d 1355, 1359–60 (Ind.Ct.App.1997). Although probable cause does not exist when an officer initially stops a suspect to investigate, probable cause to arrest may develop during the investigation. *Id.* at 1360. Further, a warrantless arrest is permissible if a misdemeanor is committed in the officer's presence. *Foster v. State*, 633 N.E.2d 337, 346 (Ind.Ct.App.1994), *trans. denied;* see *also* Ind.Code § 35–33–1–1.

Here, during the course of the investigatory stop, Edwards provided the officers with four different names and three different dates of birth. We agree with the trial court that these facts and circumstances would warrant a man of reasonable caution to believe that Edwards was giving false information to a police officer and committing an offense such as false informing, a misdemeanor.[5]

Article I, Section 11 of the Indiana Constitution provides as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

5. Ind.Code § 35–44–2–2(c) provides in pertinent part that a "person who ... gives false

■ Further, we note that a police officer may execute a warrantless search of a person if the search is incident to a lawful arrest. *Stevens v. State*, 701 N.E.2d 277, 280 (Ind.Ct.App.1998). Here, the officers found the cocaine during a search incident to Edwards's lawful arrest.[6] We find no violation of Edwards's federal constitutional rights.

■ Separate and apart from the federal Fourth Amendment analysis, the Indiana Constitution provides an independent prohibition against unreasonable searches and seizures under Article I, Section 11. *Ben–Yisrayl v. State*, 690 N.E.2d 1141, 1152 (Ind.1997), *reh'g denied, cert. denied*, 525 U.S. 1108, 119 S.Ct. 877, 142 L.Ed.2d 777. Such challenges are analyzed under an independent "reasonableness" standard. *Id.*

Here, the officers stopped a car that was speeding on a snow-covered street. Both the driver and the passenger gave the officers the same name and date of birth. Edwards subsequently apologized to the officers for his dishonesty and gave them three additional names and two additional dates of birth. Based upon the foregoing actions, the officers arrested Edwards and searched him pursuant to the arrest. We agree with the State that the search and seizure of Edwards was reasonable. *See Ben–Yisrayl*, 690 N.E.2d at 1152.

### III.

■ The third issue is whether the trial court erred in denying Edwards's motion to dismiss.

■ The State alleged that Edwards possessed three or more grams of cocaine and charged him with a class A felony. In his motion to dismiss, Edwards argued that the cocaine allegedly recovered from him weighed only 1.12 grams. He therefore asked the trial court to dismiss the case because of insufficient evidence. However, as the State correctly points out, " '[m]otions to dismiss, before trial, directed to the sufficiency of the evidence, are improper.' " *State v. Houser*, 622 N.E.2d 987, 988 (Ind.Ct.App.1993), *reh'g denied, trans. denied* (quoting *State v. Nesius*, 548 N.E.2d 1201, 1205 (Ind.Ct.App.1990)). The trial court, therefore, did not err in denying Edwards's motion to dismiss.

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

MATHIAS, J. concurs.

SULLIVAN, J. concurs in part and dissents in part with separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part

I concur in the conclusion of the majority that probable cause existed for the arrest of Edwards for an offense such as false reporting or some other crime involving the use of false names and/or permitting unlawful use of his identification by the driver of the vehicle. I respectfully dissent, however, from the majority's conclusion that the strip search of Edwards was constitutional merely because it was incident to his arrest. It is true that the police may conduct a warrantless search of the arrestee's person and the area within his immediate control. *Culpepper v. State*, 662 N.E.2d 670, 675 (Ind.Ct.App.1996);

---

information in the official investigation of the commission of a crime, knowing the ... information to be false ... commits false informing, a class B misdemeanor."

6. We note that police officers searched Edwards's house with his consent. Consent is one of the exceptions to the warrant requirement. *State v. Foreman*, 662 N.E.2d 929, 931 (Ind.1996).

*Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), *reh'g denied*. Nevertheless, the legitimacy of Edwards's arrest on a minor offense does not justify the jail-house strip search here involved.

In *Bell v. Wolfish*, 441 U.S. 520, 558, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), inmates at a federally operated short-term custodial facility designed primarily to house pretrial detainees were required to expose their body cavities for visual inspection as a part of a strip search conducted after every contact visit with a person from outside the institution. The *Bell* court, citing security concerns about the smuggling of contraband into the jail, held that such searches were reasonable even though they were based upon less than probable cause. *Id.* at 559–60, 99 S.Ct. 1861.

However, as many courts have since recognized, the *Bell* decision does not validate strip searches of all arrestees. *Wilson v. Shelby County, Ala.*, 95 F.Supp.2d 1258, 1262 (N.D.Ala.2000). Indeed, most federal Circuit Courts of Appeals have held that individuals arrested for relatively minor offenses may not be routinely strip searched.[7] In *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1273 (7th Cir. 1983), the Seventh Circuit Court of Appeals held that, absent reasonable suspicion that an offender was concealing weapons or contraband, the police could not routinely strip search misdemeanor offenders detained awaiting the posting of bond. I would adopt the reasoning of the Seventh Circuit and hold that, before the police may strip search an individual detained for a minor offense, such as Edwards, they must have a reasonable suspicion that the defendant was in the possession of weapons or contraband.[8]

Here, there was no reasonable suspicion that a strip search and visual inspection of Edwards's buttocks would reveal any evidence or contraband in connection with the offense for which Edwards was apparently arrested, i.e. False Reporting,[9] a Class B misdemeanor. Nor was there even a hint that Edwards had drugs or weapons secreted on or about his person.

Prior to the jail-house strip search, Edwards was patted down and searched at the scene of the traffic stop. Nothing was found. Likewise, a search of the car at the scene revealed no sign of drugs or contraband. Edwards even consented to a search of his apartment, where a police canine unit found nothing. Only when Edwards was returned to the jail and strip searched was the cocaine found.

7. *See, e.g., Swain v. Spinney*, 117 F.3d 1, 5 (1st Cir.1997); *Weber v. Dell*, 804 F.2d 796, 800 (2d Cir.1986), *cert. denied*, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987); *Logan v. Shealy*, 660 F.2d 1007, 1013 (4th Cir.1981), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *Stewart v. Lubbock County, Tex.*, 767 F.2d 153, 156–57 (5th Cir.1985), *cert. denied*, 475 U.S. 1066, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986); *Masters v. Crouch*, 872 F.2d 1248, 1255 (6th Cir.1989), *cert. denied*, 493 U.S. 977, 110 S.Ct. 503, 107 L.Ed.2d 506; *Tinetti v. Wittke*, 479 F.Supp. 486, 491 (E.D.Wis.1979), *aff'd* 620 F.2d 160 (7th Cir. 1980) (per curiam); *Jones v. Edwards*, 770 F.2d 739, 742 (8th Cir.1985); *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1446 (9th Cir.1991); *Hill v. Bogans*, 735 F.2d 391, 394 (10th Cir. 1984); *Justice v. City of Peachtree City*, 961 F.2d 188, 192 (11th Cir.1992); *see also* Wayne R. LaFave, Search and Seizure. A Treatise on the Fourth Amendment § 5.3(c) at 143–45 (3d ed.1996).

8. Of course, the case would be different if Edwards had been arrested for a crime such as drug possession or assault, which itself might give rise to a reasonable suspicion that the defendant may be concealing weapons or contraband. *See Mary Beth G.*, 723 F.2d at 1273.

9. Ind.Code § 35–44–2–2(c) (Burns Code Ed. Repl.1998).

Any suspicion which may have existed when the police discovered cocaine on the driver was dissipated by subsequent events. One might with good reason say, with respect to continued detention and multiple searches, that enough is enough. The strip search, despite being incident to Edwards's arrest, was not reasonable with regard to either the Fourth Amendment or Article 1, Section 11.

I would therefore reverse the trial court's decision and hold that any evidence discovered in the course of the unreasonable search of Edwards be suppressed.